UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | * | CASE NO. 16-72113-JWC |
| | * | |
| D & N ELECTRIC, A CARTER BROTHERS COMPANY, | * | CHAPTER 7 |
| | * | |
| Debtor. | * | |
| | * | |
| IN RE | * | CASE NO. 18-61490-JWC |
| | * | |
| CARTER BROTHERS SECURITY SERVICES, LLC. | * | |
| | * | |
| Debtor. | * | |

**MOTION TO APPROVE SETTLEMENT AND COMPROMISE**

COME NOW Tamara Ogier, as Chapter 7 Trustee for the bankruptcy estate of D&N Electric, A Carter Brothers Company ("D&N") and Robert Trauner, as Chapter 7 Trustee for the bankruptcy estate of Carter Brothers Security Services, LLC ("CBSS") (collectively "Trustees") and bring this Motion to Approve Settlement and Compromise pursuant to Fed.R.Bankr.P. 9019 (the "Motion") resolving the claims by and against Bank of America, N.A. and FIA Card Services, N.A.[1] (collectively "Defendants", together with the Trustees, the "Parties"):

1.

D & N commenced a voluntary Chapter 11 proceeding on or about December 11, 2016. Tamara Miles Ogier was appointed as the Chapter 11 Trustee on or about June 26, 2018. The case converted to one under Chapter 7 on or about August 30, 2018. CBSS filed a voluntary petition constituting an order for relief under Chapter 7 on July 10, 2018, initiating Case No. 18-

---

[1] According to Defendants' Answer, Affirmative Defenses, and Counterclaims, FIA Card Services, N.A. merged into Bank of America N.A., effective on or about October 1, 2014.

61490-JWC. Robert Trauner was appointed to the CBSS Case as interim Chapter 7 trustee, pursuant to 11 U.S.C. § 701(a)(1) and became the permanent Chapter 7 trustee, pursuant to 11 U.S.C. § 702(d), at the conclusion of the meeting of creditors conducted on August 13, 2018.

2.

Trustees' investigations of transfers by the Debtors have revealed numerous instances of Debtors paying personal obligations of ownership, as well as debts owed by ownership's other businesses. Trustees commenced Adversary Proceeding No. 19-05356-JWC against Defendants asserting that Debtors paid Defendants for services that were rendered to another party and seeking to recover $585,717.89 in transfers. Defendants alleged, among other things, that certain documents executed by and amongst the Debtors in favor of Defendants rendered the estates' co-liable on the debts to Defendants. Defendants furthermore filed counterclaims based upon, among other things, certain releases executed by the then debtor in possession, asserting that regardless of the merits of the Trustees' Complaint, the claims asserted in Adversary Proceeding No. 19-05356 had been released. The parties entered into mediation in an effort to resolve the claims, defenses and counterclaims raised. At the time of the mediation, the Trustees had been satisfied that the actionable transfers were limited to payments by D&N to Defendants and the Trustee for CBSS abandoned any claims for recovery. Upon review of the actionable transfers, the alleged cross guarantees of debt and the asserted counterclaims, the parties have determined that this matter is best resolved by settlement under the terms of the attached Exhibit "A". Pursuant to this agreement, Bank of America, N.A. shall pay to Trustee Tamara Ogier the amount of $150,000.00 in resolution of claims by and between the Trustees and Defendants.

3.

Federal Rules of Bankruptcy Procedure 9019(a) provides, in pertinent part, that "[o]n motion by Trustee and after notice of a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). The standard in this Circuit for determining whether to approve a compromise or settlement pursuant to Rule 9019(a) is set forth in *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544 (11th Cir. 1990), cert. denied, 498 U.S. 959 (1990), in which the Eleventh Circuit stated as follows:

> "When a bankruptcy court decides whether to approve or disapprove a proposed settlement, it must consider:
>
> (a) the probability of success in the litigation;
> (b) the difficulties, if any, to be encountered in the matter of collection;
> (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and
> (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises."

*Id.* at 1549. In making its evaluation, a court must not rest its approval of the settlement on a resolution of the ultimate factual and legal issues underlying the compromised disputes. *In re Teltronics Servs., Inc.*, 762 F.2d 185, 189 (2d Cir. 1985). Rather, the court should consider the probable outcome of the litigation, including its advantages and disadvantages, and make a pragmatic decision based on all equitable factors. *Florida Trailer and Equip. Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960).

4.

The proposed settlement between the Parties is the product of arms-length negotiations conducted through mediation and reflects the Parties' analysis and consideration of the relevant legal, factual, and economic issues.

5.

Trustees believe that the payments described in the Adversary Proceeding were made pursuant to a pattern and practice of conduct described in the Adversary Proceeding as fraudulent, and that to the extent Defendants provided any value in exchange for the transfers, it was not provided to D&N.  Defendants have denied the Trustees' allegations and have alleged, among other things, that the relevant account documents render the estates liable for one other's debts, irrespective of the actual use or benefit to the estates.  Furthermore, the debtor in possession agreed to a release and waiver of claims vis a vis the Defendants, which could constitute a bar against the Trustees' pursuit of these claims regardless of the merits of the Trustees' Complaint.  Trustees believe the prima facie case stated in the Complaint is strong, but the particular defenses available to these Defendants, which are not common to the Debtors' creditor base, impact what the Trustees may expect in recovery.  Trustees furthermore believe that the cost of litigation mitigates in favor of an early settlement of this matter.

6.

The transactions that were part of the pattern and practice of conduct described in the Adversary Proceeding were complex, involving numerous entities and transfers.  Proof of this matter at trial would be complex, in relation to the amount at issue.  Nevertheless, the Trustees' duty is to bring such actions and resolve them reasonably.  Considering the necessary costs to

the estate, the overall benefit of the estate is served by the proposed resolutions described on Exhibit "A".

7.

The Parties have agreed the cause of action in the disputes belongs to D&N, not CBSS, and as such the Settlement Amount shall go in its entirety to D&N. Pursuant to the agreement concerning representation made with Trustees' counsel, said counsel is entitled to a 40% contingency on the estates' recovery. Accordingly, $60,000.00 of the Settlement Amount is payable to Trustees' counsel, subject to the terms of agreement between counsel and the estates. 11 U.S.C. § 328(a).

WHEREFORE, the Trustees respectfully request that the Court enter an Order (i) granting this Settlement Motion; (ii) authorizing the Trustees to take actions reasonably necessary to effectuate the terms of the Settlement Agreements; and (iii) authorizing payment to the Trustees' counsel subject to the terms of the employment agreement approved by this Court and (iv) granting to the parties such other and further relief as the Court deems just and appropriate.

MACEY, WILENSKY & HENNINGS, LLP

/s/ Todd E. Hennings
Todd E. Hennings, Bar No. 347302

5500 Interstate North Parkway
Suite 435
Atlanta, GA 30328
(404) 584-1234
(404) 681-4355- Facsimile

thennings@maceywilensky.com
Attorneys for Robert Trauner, as
Chapter 7 Trustee for the bankruptcy
estate of Carter Brothers Security
Services, LLC, and Tamara Ogier,
as Chapter 7 Trustee for the bankruptcy
estate of D&N Electric, A Carter Brothers
Company

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement (this "Agreement") dated as of December 16, 2020, is entered by and between **Tamara Ogier, solely in her capacity as Chapter 7 Trustee** (the "D&N Trustee") for D & N Electric, A Carter Brothers Company, a Georgia corporation ("D&N"), **Robert Trauner, solely in his capacity as Chapter 7 Trustee** (the "CBSS Trustee;" and together with the D&N Trustee collectively, the "Trustees") for Carter Brothers Security Services, LLC, a Georgia limited liability company ("CBSS"), and **Bank of America, N.A.**, a national banking association (the "Bank"). Any and all references to the "Bank" in this Agreement will include FIA Card Services, N.A., predecessor in interest to the Bank.

### Recitals

A.  On December 11, 2016, D&N filed for voluntary relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court, Northern District of Georgia, Atlanta Division (the "Bankruptcy Court"), which case was assigned Case No. 16-72113 (the "D&N Bankruptcy Case"). The D&N Bankruptcy Case was converted to one under Chapter 7 on August 30, 2018. The D&N Trustee is Chapter 7 Trustee for the estate of D&N. Any and all references to "D&N" in this Agreement include the bankruptcy estate of D&N.

B.  On July 10, 2018, CBSS filed for voluntary relief under Chapter 7 of the Bankruptcy Code in the Bankruptcy Court, which case was assigned Case No. 18-61490 (the "CBSS Bankruptcy Case;" and together with the D&N Bankruptcy Case collectively, the "Bankruptcy Cases"). The CBSS Trustee is Chapter 7 Trustee for the estate of CBSS. Any and all references to "CBSS" in this Agreement include the bankruptcy estate of CBSS.

C.  On December 23, 2019, the Trustees filed their Complaint to Avoid and Recover Transfers ("Complaint") in the Bankruptcy Court, which proceeding was assigned Adversary Proceeding No. 19-5356 (the "Avoidance Action"), seeking, among other things, to avoid and recover certain transfers (any and all claims that were asserted by the Trustees in the Avoidance Action are collectively referred to in this Agreement as the "Avoidance Claims").

D.  On February 28, 2020, the Bank filed its Answer, Affirmative Defenses and Counterclaims in the Avoidance Action, asserting, among other things, certain counterclaims (any and all counterclaims that were asserted by the Bank in the Avoidance Action are collectively referred to in this Agreement as the "Counterclaims").

E.  The Trustees and the Bank (each a "Party" and collectively, the "Parties") wish to avoid the risks and expenses of litigation, and to fully settle, once and forever, all rights, claims and demands which any of them had, has, or may have against the other.

F.  This Agreement will not be enforceable or of any effect unless and until approved by order of the Bankruptcy Court under Fed. R. Bankr. P. 9019.

Page 1 of 7



**NOW, THEREFORE**, for TEN DOLLARS ($10.00) in hand paid, and for and in consideration of the mutual covenants contained in this Agreement, and for other good and valuable consideration, the sufficiency and receipt of which are mutually acknowledged, the Parties agree as follows:

1. ***Recitals.*** The above recitals are confirmed by the Parties as true and correct, and are incorporated herein by reference. The recitals are a substantive, contractual part of this Agreement.

2. ***Resolution of Avoidance Claims and Counterclaims.*** Subject to approval of this Agreement by the Bankruptcy Court, the Parties agree to resolve the Avoidance Claims and Counterclaims as follows:

   2.1. ***Approval of Proposed Settlement.*** Within not more than **five (5) calendar days** after execution and delivery of this Agreement by each of the Parties, the Trustees will each prepare and file the necessary papers in their respective Bankruptcy Cases, including, but not limited to, a motion pursuant to Fed. R. Bankr. P. 9019 (collectively, "Settlement Approval Motions"), seeking entry of an order (each a "Settlement Approval Order," and collectively the "Settlement Approval Orders") by the Bankruptcy Court, approving the compromise and settlement contemplated under this Agreement. All Parties will use their reasonable best efforts to obtain court approval of this Agreement.

   For the purposes of this Agreement, a Settlement Approval Order becomes final when such order has been entered on the docket in the appropriate bankruptcy case, and such order (a) has not been reversed, stayed, modified or amended, and as to which the time to appeal from, or to seek review or rehearing of, has expired and as to which no appeal or petition for review, rehearing or certiorari is or are pending; or (b) if appealed from, has been affirmed (or the appeal dismissed) and the time to appeal from such affirmance or to seek review or rehearing thereof has expired, or no further hearing, appeal or petition for certiorari can be taken or granted.

   2.2. ***Payment of the Settlement Payment.*** Promptly after the Settlement Approval Orders become final, the Bank will deliver a payment to the D&N Trustee in the amount of $150,000.00 (the "Settlement Payment"), in full and final satisfaction of all Claims (as defined in Section 8 of this Agreement).

   2.3. ***Dismissal of the Complaint and Counterclaims with Prejudice.*** Promptly after receipt of the Settlement Payment by the D&N Trustee as provided under Section 2.2 of this Agreement, the Trustees will dismiss with prejudice the Complaint and the Bank will dismiss with prejudice the Counterclaims; provided, that dismissal of the Counterclaims will have no effect on any claims or causes of action the Bank has or may have against John F. Carter, Cris D. Carter, and/or MGA Holdings, LLC. The dismissals with prejudice under this Section of the Agreement may be accomplished by filing a joint stipulation of dismissal with prejudice signed on behalf of all Parties, and the Parties will cooperate with each

other to file such other papers as may be necessary to dismiss with prejudice the Complaint and the Counterclaims in accordance with Fed. R. Bankr. P. 7041.

2.4. ***D&N Trustee's Release.*** Effective upon a Settlement Approval Order becoming a final order in the D&N Bankruptcy Case and payment of the Settlement Payment to the D&N Trustee, and except for the rights, duties, and obligations created or preserved under this Agreement, the D&N Trustee and D&N release, acquit, and forever discharge the Bank, as well as U.S. Trust, Bank of America Private Wealth Management, and Bank of America Corporation, Banc of America Funding Corporation, Banc of America Insurance Services, Inc., Banc of America Mortgage Capital Corporation, Bank of America Private Bank Company of Delaware, Merrill Lynch Alternative Investments LLC, Merrill Lynch Capital Corporation, Merrill Lynch Capital Partners, Inc., Merrill Lynch Commodities, Inc., Merrill Lynch Credit Products, LLC, Merrill Lynch Life Agency, Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Merrill Lynch Portfolio Management Inc., Managed Account Advisors LLC, First Franklin Financial Corporation, Balboa Insurance Company, General Fidelity Life Insurance Company, Meritplan Insurance Company, Newport Insurance Company, BAL Corporate Aviation, LLC, BAL Energy Holding, LLC, BAL Energy Management II, LLC, BAL Investment & Advisory, Inc., (the foregoing entities collectively referred to herein as the "Bank Affiliates"), jointly and severally, from any and all Claims (as defined in Section 8 of this Agreement) that the D&N Trustee and/or D&N have or may have had against the Bank and/or the Bank Affiliates, including, without limitation, the Avoidance Claims, and all other claims and causes of action which arise out of or relate to the Bankruptcy Cases.

2.5. ***CBSS Trustee's Release.*** Effective upon a Settlement Approval Order becoming a final order in the CBSS Bankruptcy Case and payment of the Settlement Payment to the D&N Trustee, and except for the rights, duties, and obligations created or preserved under this Agreement, the CBSS Trustee and CBSS release, acquit, and forever discharge the Bank and the Bank Affiliates, jointly and severally, from any and all Claims (as defined in Section 8 of this Agreement) that the CBSS Trustee and/or CBSS have or may have had against the Bank and/or the Bank Affiliates, including, without limitation, the Avoidance Claims, and all other claims and causes of action which arise out of or relate to the Bankruptcy Cases.

2.6. ***Bank's Release of D&N.*** Effective upon a Settlement Approval Order becoming a final order in the D&N Bankruptcy Case, and except for the rights, duties, and obligations created or preserved under this Agreement, the Bank releases, acquits, and forever discharges the D&N Trustee and D&N, jointly and severally, from any and all Claims (as defined in Section 8 of this Agreement) that the Bank has or may have had against the D&N Trustee and/or D&N, including, without limitation, the Counterclaims, and all other claims and causes of action which arise out of or relate to the Bankruptcy Cases; provided that nothing in this section or elsewhere in this Agreement waives or releases any claims or causes of action

the Bank has or may have against John F. Carter, Cris D. Carter, and/or MGA Holdings, LLC.

2.7. *Bank's Release of CBSS.* Effective upon a Settlement Approval Order becoming a final order in the CBSS Bankruptcy Case, and except for the rights, duties, and obligations created or preserved under this Agreement, the Bank releases, acquits, and forever discharges the CBSS Trustee and CBSS, jointly and severally, from any and all Claims (as defined in Section 8 of this Agreement) that the Bank has or may have had against the CBSS Trustee and/or the CBSS, including, without limitation, the Counterclaims, and all other claims and causes of action which arise out of or relate to the Bankruptcy Cases; provided that nothing in this section or elsewhere in this Agreement waives or releases any claims or causes of action the Bank has or may have against John F. Carter, Chris D. Carter, and/or MGA Holdings, LLC.

3. *Entire Agreement; Modification.* The Parties agree that there are no other agreements, oral or written, between or among them relating to any matters covered by this Agreement, and that this Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained in this Agreement; provided, however, that the Parties agree to stipulate and/or consent to the Settlement Approval Orders, and the Parties agree to execute, deliver, and/or file such other documents or papers, as set forth in this Agreement. The Parties further agree that this Agreement may not be altered, amended, or modified in any respect whatsoever, except by a writing, duly executed by each of the Parties, or their attorneys in fact, and that any material amendment is subject to Bankruptcy Court approval.

4. *Voluntary Execution and Joint Draftsmanship.* The Parties hereby mutually acknowledge and represent and warrant that they have been fully advised by their respective legal counsel of their rights and responsibilities under this Agreement, that they have read, know, and understand completely the contents of this Agreement, and that they have voluntarily executed this Agreement. Further, the terms and conditions in this Agreement are the product of joint draftsmanship by all Parties, each being represented by counsel, and any ambiguities in this Agreement or any documentation prepared pursuant to or in connection with this Agreement will not be construed against any of the Parties because of draftsmanship.

5. *Authority of Parties.* The persons executing this Agreement represent and warrant that they have the legal and institutional authority to do so on behalf of the person or legal entity for which they are signing.

6. *Counterparts.* This Agreement may be executed in one or more counterparts, each of which is an original, and all of which constitute only one agreement between the Parties. Counterparts of this Agreement also may be exchanged via electronic transmission such as facsimile machines or computer, and any Party's signature transmitted by such electronic transmission will be deemed to be an original signature for all purposes.

7. *Bankruptcy Court Jurisdiction.* The Bankruptcy Court will retain jurisdiction over the Parties for enforcement of this Agreement and any and all disputes, controversies, or claims

regarding the interpretation, validity, construction, or other issues relating to or concerning this Agreement. An action relating to, based upon, or arising from a breach of this Agreement will be brought only in the Bankruptcy Court, which will retain jurisdiction over the subject matter and the Parties for this purpose.

8. *Definition of Claims.* As used in this Agreement, the term "Claims" means any and all claims, as defined in Section 101(5) of the Bankruptcy Code. Without limiting in any way the generality of the preceding sentence, as used in this Agreement, the term "Claims" also includes the Avoidance Claims and Counterclaims, together with any and all counterclaims, demands, damages, debts, agreements, covenants, suits, obligations, liabilities, accounts, offsets, rights, actions and causes of action of any nature whatsoever, including, without limitation, all claims, demands, and causes of action for contribution and indemnity, whether arising at law or in equity (including without limitation, claims of fraud, duress, mistake, tortious interference and/or usury), whether presently possessed or possessed in the future, whether known or unknown, whether liability be direct or indirect, liquidated or unliquidated, whether presently accrued or to accrue hereafter, whether absolute or contingent, foreseen or unforeseen, and whether or not heretofore asserted, for or because of or as a result of any act, omission, communication, transaction, occurrence, representation, promise, damage, breach of contract, fraud, violation of any statute or law, commission of any tort, or any other matter whatsoever or thing done, omitted or suffered to be done which has occurred in whole or in part, or was initiated at any time from the beginning of time up to and immediately preceding the moment of the execution of this Agreement, but not including any claims which arise out of or relate to a breach of this Agreement.

9. *Georgia Law Applicable.* This Agreement will be governed by, and construed in accordance with, the laws of the State of Georgia, without regard to its conflict of law principles.

10. *Severability.* If any provision of this Agreement is illegal or unenforceable, that provision is severed from this Agreement, and the other provisions remain in force and effect.

11. *Parties to Bear Own Costs.* Except as otherwise stated in this Agreement, each Party will bear its own costs (including attorneys' fees) incurred in connection with the Bankruptcy Cases, including the negotiation, preparation, execution, and carrying out of this Agreement and any other agreements, instruments, or documents executed in accordance with the terms of this Agreement; provided that the Trustees and their counsel may seek approval for the payment of fees and costs in accordance with the Bankruptcy Code.

12. *Cooperation.* The Parties will perform or cause to be performed such acts and will execute and deliver such documentation as may be reasonably required to give effect to the terms or undertakings of this Agreement.

13. *No Admissions, Effect of Denial.* The Parties acknowledge and agree that this Agreement is being executed and delivered as part of the compromise and settlement of disputed claims and is expressly contingent upon and subject to the approval of the Bankruptcy Court. In the event a Settlement Approval Order does not become a final

Page 5 of 7

order in the D&N Bankruptcy Case, this Agreement will be deemed null and void and will have no force or effect as between the D&N Trustee, D&N, and the Bank. In the event a Settlement Approval Order does not become a final order in the CBSS Bankruptcy Case, this Agreement will be deemed null and void and will have no force or effect as between the CBSS Trustee, CBSS.

**(Signatures Appear on Following Page – Remainder of Page Intentionally Blank)**

The Parties below have executed this Agreement under seal, and the Parties have delivered this Agreement on the dates set forth below their respective signature lines; provided, however, that the failure of any of the Parties to include a date below will not effect this Agreement in any way.

**D&N TRUSTEE:**

By:_____ (SEAL)
    Tamara Ogier, solely in her capacity of Chapter 7
    Trustee for the Estate of D & N Electric, A Carter
    Brothers Company

Dated:_____

**CBSS TRUSTEE:**

By:_____ (SEAL)
    Robert Trauner, solely in his capacity of Chapter 7
    Trustee for the Carter Brothers Security Services, LLC

Dated:_____

**BANK OF AMERICA, N.A.:**

By:_____ (SEAL)
    Peter G. Meek
    Senior Vice President

Dated:_____

**[Settlement Agreement Signature Page – End of Document]**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE | * | Case No. 16-72113-JWC |
| D & N ELECTRIC, A CARTER BROTHERS COMPANY, | * | Chapter 7 |
| Debtor. | * | |
| IN RE | * | Case No. 18-61490-JWC |
| CARTER BROTHERS SECURITY SERVICES, LLC, | * | |
| Debtor. | * | |

## NOTICE OF ASSIGNMENT OF HEARING

**PLEASE TAKE NOTICE** that Tamara Ogier, as Chapter 7 Trustee for the bankruptcy estate of D&N Electric, A Carter Brothers Company and Robert Trauner, as Chapter 7 Trustee for the bankruptcy estate of Carter Brothers Security Services, LLC, (collectively "Trustees") filed **Motion to Approve Settlement and Compromise** and related papers with the Court on December 16, 2020. Trustee's seek an order approving this settlement.

Pursuant to General Order No. 24-2018, the Court may consider this matter without further notice or a hearing if no party in interest files a response or objection within twenty-one (21) days from the date of service of this notice. **If you object to the relief requested in this pleading, you must timely file your objection with the Bankruptcy Clerk** at:

United States Bankruptcy Clerk
United States Bankruptcy Court and U.S. Courthouse,
1340 Richard Russell Federal Bldg.,
75 Ted Turner Drive SW, Atlanta, GA 30303

and serve a copy on the movant's attorney at:

Todd E. Hennings
Macey, Wilensky & Hennings, LLP
5500 Interstate Parkway North, Suite 435
Sandy Springs, GA 30328

and any other appropriate persons by the objection deadline. The response or objection must explain your position and be actually received by the Bankruptcy Clerk within the required time.

A hearing on the pleading has been scheduled for **January 7, 2021,** at **11:00 a.m.** in Courtroom **1203**, United States Bankruptcy Court, Richard B. Russell Federal Building and U.S. Courthouse, 75 Ted Turner Drive, SW, Atlanta, 30303. Given the current public health crisis, hearings may be telephonic only. Please check the "Important Information Regarding Court Operations During COVID-19 Outbreak" tab at the top of the GANB Website prior to the hearing for instructions on whether to appear in person or by phone. If an objection or response is timely filed and served, the hearing will proceed as scheduled. **If you do not file a response or objection within the time permitted, the Court may grant the relief requested without further notice or hearing** provided that an order approving the relief requested is entered at least one business day prior to the scheduled hearing. If no objection is timely filed, but no order is entered granting the relief requested at least one business day prior to the hearing, the hearing will be held at the time and place as scheduled.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.**

Dated: December 16, 2020.

MACEY, WILENSKY & HENNINGS, LLP

                                  /s/ Todd E. Hennings
                                  Todd E. Hennings, Bar No. 347302

5500 Interstate North Parkway
Suite 435
Atlanta, GA 30328
(404) 584-1234
(404) 681-4355- Facsimile
thennings@maceywilensky.com